IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CITIBANK, N.A., )
    Plaintiff, )
)
v. ) No. 1:10cv459
)
SEED INTERNATIONAL, INC., )
    Defendant. )

## TEMPORARY RESTRAINING ORDER

The matter came before the Court on plaintiff's motion for a temporary restraining order pursuant to Rule 65(b), Fed. R. Civ. P. Defendant was not given notice of the motion for a temporary restraining order or the scheduled hearing. Accordingly, only plaintiff appeared, by counsel, at a May 14, 2010 *ex parte* hearing, which was conducted under seal. For the reasons stated here, plaintiff's motion was granted at 9:50 a.m., Friday, May 14, 2010.

On May 5, 2010, plaintiff filed a complaint alleging breach of contract and unjust enrichment relating to the following alleged facts:

1. Defendant maintained a business checking bank account (the "Citibank Account") at a branch of plaintiff located on Lee Jackson Memorial Highway in Chantilly, Virginia. On March 3, 2010, the Citibank Account held a balance of $164,151.25.

2. On March 3, 2010, Eun Tae Lee, an authorized signatory of defendant, drafted and executed a check payable to defendant, drawing down the full balance—$164,151.25—of the Citibank Account. The check was immediately deposited in an account maintained by defendant at BB&T bank (the "BB&T Account"). On presentment of the check by BB&T shortly thereafter, plaintiff credited defendant's BB&T Account with $164,151.25.

3. On March 4, 2010, plaintiff's electronic records showed that the Citibank Account balance was still $164,151.25, despite the fact that these funds had been transferred to the BB&T Account on March 3, 2010, on presentment of the check drafted by Lee. Thus, Lee visited plaintiff's Chantilly branch and obtained a cashier's check in the amount of $164,151.25, again drawing down

on defendant's Citibank Account. The cashier's check was made payable to defendant and was immediately deposited into defendant's BB&T Account.

4. In the course of the May 14, 2010 hearing, plaintiff's counsel represented that the funds at issue in this case still remained in defendant's BB&T Account.

On May 12, 2010, plaintiff filed the motion at bar for a temporary restraining order. In support of the motion, plaintiff submitted an affidavit by Daniel J. Tobin, counsel for defendant.[1] Tobin avers that although BB&T counsel had previously represented that the funds at issue in this case located in the BB&T Account were subject to an internal freeze, BB&T counsel stated on May 12, 2010, that plaintiff could no longer rely on any BB&T assurances that an internal hold would remain in place on the funds located in defendant's BB&T Account. Accordingly, plaintiff advised BB&T counsel that it would seek a temporary restraining order against defendant. According to Tobin's affidavit, although BB&T takes no position as to the motion at bar, BB&T's counsel has provided plaintiff with information concerning service of a temporary restraining order on BB&T in order to facilitate the prompt implementation of any such order.

Rule 65(b)(2), Fed. R. Civ. P., requires a court granting a temporary restraining order to "describe the injury and state why it is irreparable" and "state why the order was issued without notice." Additionally, the Fourth Circuit in *The Real Truth About Obama v. Fed. Election Comm'n*, 575 F.3d 342 (4th Cir. 2009), recently had occasion to clarify the standard governing a motion for a temporary restraining order. Specifically, the Fourth Circuit held that the movant must make a clear showing as to four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance

---

[1] Jenelle Dennis appeared on behalf of plaintiff at the May 14, 2010 hearing. Tobin represents that while he has not been admitted *pro hac vice* in this matter and thus has not appeared on behalf of plaintiff in relation to this case, he intends to file such an application.

of equities tips in his favor; and (4) that an injunction is in the public interest. *See id.* at 347.

In this case, plaintiff has been injured because defendant has overdrawn funds from its Citibank Account by $164,151.25. This injury is irreparable because the funds were obtained by fraudulent means and, in this respect, it is these precise funds that are the subject of plaintiff's claims. In the circumstances, it is appropriate to issue the temporary restraining order without notice to defendant because such notice may cause defendant to withdraw or transfer the funds in the BB&T Account.

Moreover, the *Real Truth About Obama* factors are clearly met in this case. To begin with, plaintiff is likely to succeed on the merits of its breach of contract claim. In this respect, the complaint alleges that defendant was obligated, under a valid contract, not to overdraw funds from its Citibank Account beyond the current account balance, and that defendant breached this obligation on March 4, 2010, by requesting a cashier's check in the amount of $164,151.25, using funds from its Citibank Account. Furthermore, plaintiff, by counsel, represented in the course of the May 14, 2010 hearing that it would seek to amend the complaint by adding claims for fraud and/or conversion. Notably, "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract," which requires proof of "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999). It is likely, based on a review of the complaint and Tobin's affidavit, that plaintiff will prevail on these theories as well.

Additionally, it is clear that, absent the issuance of a temporary restraining order, defendant may withdraw or transfer the funds from the BB&T Account upon receiving notice of

this civil action. Indeed, it is worth emphasizing that defendant allegedly obtained the funds fraudulently in the first instance. Thus, a review of the complaint and the Tobin affidavit compel the conclusion that plaintiff is likely to suffer irreparable harm absent the issuance of a temporary restraining order, that the balance of equities tips in favor of plaintiff, and that a temporary restraining order is in the public interest.

Accordingly, for the reasons stated herein, and for good cause,

It is hereby **ORDERED** that plaintiff's motion for a temporary restraining order is **GRANTED**.

It is further **ORDERED** that defendant be, and the same is, **ENJOINED AND RESTRAINED**, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of defendant, from withdrawing or transferring the funds held in the BB&T Account.

It is further **ORDERED** that plaintiff shall post a bond or surety in the amount of $25,000 by 5:00 p.m., Monday, May 17, 2010, pursuant to Rule 65(c), Fed. R. Civ. P.

It is further **ORDERED** that plaintiff serve a copy of this Temporary Restraining Order on defendant and BB&T bank.

It is further **ORDERED** that the seal on the May 14, 2010 hearing is lifted.

It is further **ORDERED**, pursuant to Rule 65(b)(3), that a hearing in this matter is **SCHEDULED** for 10:00 a.m., Friday, May 21, 2010, for the purpose of addressing whether it is appropriate to convert this Temporary Restraining Order to a preliminary injunction.

It is further **ORDERED** that this Order shall remain in full force and effect for seven (7) days, or until such time as this Court specifically orders otherwise.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
May 14, 2010

/s/
T. S. Ellis, III
United States District Judge